United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DAVID JOHN TEECE,

    Plaintiff,

v.

KUWAIT FINANCE HOUSE (BAHRAIN)
B.S.C., ABDULHAKEEM AL-KHAYYAT,
ADNAN MALIK, and PAUL MERCER,

    Defendants.
                               /

No. C 13-03603 WHA

**ORDER GRANTING IN PART
DEFENDANTS' MOTION
FOR ATTORNEY'S FEES**

## INTRODUCTION

In this action for breach of fiduciary duties and false promises, defendant bank and defendant employees move for attorney's fees and costs following plaintiff's voluntary dismissal of the action. For the following reasons, the motion is **GRANTED IN PART**.

## STATEMENT

Plaintiff David John Teece, a resident of Berkeley, California, is a former investor in and member of the board of directors of Canterbury Limited, a New Zealand apparel company (Compl. ¶ 2). Defendant Kuwait Finance House (Bahrain) BSC ("KFH") is a company formed under the laws of Bahrain with its principal place of business in Manama, Bahrain. KFH is a provider of Islamic-complaint commercial and investment banking services. Defendants Paul Mercer, Adnan Malik, and Abdulhakeem Al-Khayyat are residents of Bahrain, and each is a senior manager or officer of KFH. Al-Khayyat is a managing director and chief financial officer of KFH (*id*. at ¶¶ 4–6).

This action arises out of attempts to inject capital into Canterbury's failing clothing business. In 2007 and 2008, as the international financial crisis developed and continued to worsen, Canterbury required additional funding to continue its business operations. Starting in 2007, Teece began to look for an opportunity to sell his shares in Canterbury (*id*. at ¶ 16). "Defendants [] expressly told Dr. Teece, in California, not to approach potential buyers of his shares in Canterbury independently, as Defendants would lead the sale process" (*id*. at ¶ 18).

In March 2008, relying on defendants' assurances that they were making efforts to market Canterbury, including Teece' shares, Teece invested $1.2 million in Canterbury. Teece invested an additional one million dollars in October 2008 (*id*. ¶¶ 20, 22).

Despite the substantial investments that Teece had already made, defendants represented to Teece that Canterbury required additional capital to stay solvent. In October 2008, Teece made an "additional $3 million investment in Canterbury . . . which KFH later attempted to hold him responsible" (*id*. at ¶ 23). This transaction was the so-called Murabaha Agreement. Defendants "induced" Teece to make the three million dollar investment by representing that it was necessary to maintain the interest of potential investors in the company, including one investor with whom defendants claimed they were close to reaching an agreement and to whom Teece had been urging defendants to sell his shares for many months (*ibid*.).

In August 2009, defendant KFH unilaterally decided to stop providing funding to Canterbury. Until that time, KFH had consistently provided Canterbury with funding to keep it going. The complaint alleges that "defendants' actions privileged their own interests and destroyed Canterbury's value to Dr. Teece" (*id*. at ¶ 26–27).

Teece refused to repay the three million dollar loan pursuant to the Murabaha Agreement. KFH sought enforcement in Bahrain before the Bahrain Chamber for Dispute Resolution ("BCDR"), an independent body established by royal decree in partnership with the American Arbitration Association (KFH(B) Affidavit ¶ 3). Teece did not appear before the Bahraini chamber and in 2012 the BCDR issued a judgment in favor of KFH and against Teece in the amount of $3,401,250, including attorney's fees and expenses (*id*. at ¶ 5).

2

On August 2, 2013, Teece filed the present action. Teece sought to recover $62,000,000 in damages, punitive damages, injunctive relief, attorney's fees, interest, and costs. On January 30, defendants moved to dismiss the action for lack of personal jurisdiction, improper venue, forum non conveniens, res judicata, and failure to state a claim (Dkt Nos. 34, 35). No answer was ever filed. On March 28, before defendants' motions were adjudicated, plaintiff filed a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).

On April 11, defendants filed the present motion for attorney's fees and costs. On April 24, Teece filed an action in New Zealand in order to pursue the claims that were the subject of this action (Teece Decl. ¶ 7). This order follows full briefing and oral argument.

**ANALYSIS**

**1. JUDICIAL NOTICE.**

Defendants have requested judicial notice pursuant to FRE 201 of a Bahraini judgment that defendants obtained against Teece, as well as, an English translation of that judgment. Teece has not opposed the request. As this order does not rely upon the evidence in question, the motion is **DENIED AS MOOT**.

**2. ATTORNEY'S FEES.**

With regard to the choice of law, Teece argues that California law governs his claims in this action, while defendants state that "[t]he Court can apply California law . . . or Bahraini law, which the parties agreed would govern the Murabaha Agreement" (Br. 8). Because Teece's claims are based in tort, the Court will apply California law to the present action.

In diversity actions, federal courts apply state law in interpreting and enforcing fee-shifting agreements. *Ford v. Baroff*, 105 F.3d 439, 442 (9th Cir. 1997). The California Code of Civil Procedure provides that, except where otherwise specified by statute, parties are free to enter their own agreements regarding the payment of fees. Similarly, a prevailing party may ordinarily recover costs under Sections 1021 and 1032(b), and the parties may contractually designate fees as recoverable costs per Section 1033.5(a)(10). The effect of these provisions is that "[p]arties may validly agree that the prevailing party will be awarded attorney's fees

3

incurred in any litigation between themselves, whether such litigation sounds in tort or in contract." *Santisas v. Goodin*, 17 Cal. 4th 599, 608 (1998).

For fee shifting in connection with actions "on a contract," California Civil Code Section 1717(b)(2) prohibits the recovery of attorney's fees "[w]here an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case," in which case there is "no prevailing party for purposes of this section."

The limitation of Section 1717(b)(2), however, applies only to contract claims. The California Supreme Court has held:

> [I]n voluntary pretrial dismissal cases, Civil Code section 1717 bars recovery of attorney fees incurred in defending contract claims, but [] neither Civil Code section 1717 nor [*International Industries, Inc. v. Olen*, 21 Cal. 3d 218 (1978)] bars recovery of attorney fees incurred in defending tort or other noncontract claims. Whether attorney's fees incurred in defending tort or other noncontract claims are recoverable after a pretrial dismissal depends upon the terms of the contractual attorney fee provision.

*Santisas*, 17 Cal. 4th at 602. "Any fees incurred with respect to non-contract claims . . . are unaffected by § 1717." *Int'l Marble & Granite of Colorado, Inc. v. Cong. Fin. Corp.*, 465 F. Supp. 2d 993, 1003 (C.D. Cal. 2006) (Judge John Wilson).

The attorney's fees clause at issue in the Murabaha Agreement stated:

> 9. FEES, COSTS AND EXPENSES
>
> 9.1 *The Purchaser will pay to the Seller* on demand all costs and expenses (*including the reasonable legal* and out-of-pocket expenses) reasonably incurred by the Seller in connection with;
>
> 9.1.1 The negotiation, preparation, execution and notarisation of the Transaction Documents; and/or
>
> 9.1.2 In connection with any waiver, amendment, *legal consultancy* or consent required or requested in relation to the Transaction Documents; and/or
>
> 9.1.3 In contemplation of, or otherwise *in connection with, the enforcement of, or preservation of rights under, the Transaction Documents.*

(Bassak Exh. E at 000430) (emphasis added).

This order finds that the attorney's fees clause in the Murabaha Agreement was broad enough to encompass some, but not all, of defendants' fees and costs. Teece sued defendants

4

for: (1) breach of fiduciary duties; (2) aiding and abetting and inducing breach of fiduciary duties against the individual defendants; and (3) concealment and false promises. These claims relate to the course of dealing between the parties that extended from 2007 until 2009, including the Murabaha Agreement signed in October 2008 (*id*. at ¶ 23). The provision within the Murabaha Agreement stated that "[t]he purchaser will pay . . . all costs and expenses . . . in connection with, the enforcement of, or preservation of rights *under, the Transaction Documents*" (Bassak Exh. E at 000430) (emphasis added).

This order finds that defendants are entitled to recover their fees and expenses for the motion practice herein directed at vindicating their rights under the Murabaha Agreement, but not otherwise. In the Court's judgment, one half of the motion practice was directed at vindicating rights under the Murabaha Agreement. The rest was directed at the broader issues raised by the complaint.*

Notably, Teece did not contend in his complaint or in his opposition to this motion that the attorney's fees provision in the Murabaha Agreement is invalid. Rather, Teece alleged that he signed the loan "only as a matter of form to get around Bahraini Islamic law requirements" (Teece Decl. ¶ 29). Teece argues that he acted merely as a "conduit to facilitate KFH's further investment in Canterbury" (*id*. at ¶ 31). In this action, Teece did not bring a claim for breach of

---

* Defendants argue that all of their litigation fees and costs arise entirely out the "preservation of their rights" under the Murabaha loan. No so. The complaint alleges a years-long process of breaches, misrepresentations, and concealments ranging from 2007 to 2009. It is alleged that defendant KFH was at "all material times the majority shareholder in Canterbury Limited," whereas Teece held approximately 40% of Canterbury's equity (Compl. ¶ 13). Provisions within the Canterbury constitution prevented Teece from selling his shares without KFH's approval (*id*. at ¶ 14). Individual defendants in this action were both officers of defendant KFH and directors of Canterbury starting in 2006, two years before the signing of the Murabaha Agreement (*ibid*.). The complaint alleges that "KFH and Dr. Teece treated their investment in Canterbury as a quasi-partnership, with the expectation that each party would act in good faith toward the other" (*id*. at ¶ 15). Teece allegedly began looking to sell his shares of Canterbury in 2007. Defendants told Teece not to approach potential buyers and that KFH would look for potential buyers (*id*. at ¶¶ 16–18). Defendants "induced" Teece to make additional investments in Canterbury, including a 1.2 million dollar personal investment in March 2008, a one million dollar personal investment in October 2008, and the Murabaha Agreement loan of three million dollars in October 2008 (*id*. at ¶¶ 22–23). It is also alleged that Teece approached a potential investor, Alexandre Gaydamak, who might have bought Teece' shares, but defendants discouraged Teece from contacting him. Gaydamak "expressed to Dr. Teece" his interest in buying up to $75,000,000 of Canterbury shares, but defendants never pursued the purchase (*id*. at ¶ 24).

5

contract, nor otherwise explicitly argue that the Murabaha Agreement is invalid. Accordingly, invalidity of the agreement is not a basis for the denial of attorney's fees in the present motion.

Teece does, however, makes several arguments for why the motion should not be granted. *First*, Teece argues that his voluntary dismissal under Rule 41(a)(1)(A)(i) divested this Court of jurisdiction to consider the merits of the issue. "In short, the [Rule] 41(a)(1)(A)(i) dismissal leaves the parties as though no action had been brought" (Opp. 8) (internal citations omitted). Teece cites our court of appeals' decision in *American Soccer Co., Inc. v. Score First Enterprises, a Div. of Kevlar Indus.*, 187 F.3d 1108 (9th Cir. 1999). *American Soccer*, however, is not on point. There, our court of appeals held that a plaintiff has an absolute right to voluntarily dismiss an action when the defendant has not yet served an answer, and a court may not dismiss the action *with prejudice*. *Id*. at 1110. Our court of appeals did not hold, however, that a voluntary dismissal prevents a defendant from moving for attorney's fees and costs. In fact, "[i]t is well established that a federal court may consider collateral issues after an action is no longer pending." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990); *Drybread*, 151 Cal. App. 4th at 1071. Accordingly, jurisdiction exists to consider the attorney's fees motion.

*Second*, Teece argues that defendants are not the "prevailing party" under Rule 54 where the action was voluntarily dismissed by plaintiff. For this proposition, Teece cites the Supreme Court decision *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*, 532 U.S. 598 (2001). In *Buckhannon* the Supreme Court held in the context of the Fair Housing Amendments Act that prevailing party status turns on whether there has been a "material alteration of the legal relationship of the parties." *Id*. at 604 (internal quotation marks omitted). Teece argues that because the legal relationship between the parties is the same as it was before this action was filed, defendants cannot claim to be the prevailing party. Similarly, our court of appeals has held in the context of another *federal statute* that "dismissal without prejudice did not confer prevailing party status upon the defendant." *Oscar v. Alaska Dep't of Educ. & Early Dev.*, 541 F.3d 978, 982 (9th Cir. 2008).

6

The decisions relied upon by Teece, however, all involved federal claims and none involved a district court sitting in diversity. "In a diversity case, the availability of attorney's fees is governed by state law." *Kern Oil & Ref. Co. v. Tenneco Oil Co.*, 792 F.2d 1380, 1388 (9th Cir. 1986). It is clear that the term "prevailing party" has a different meaning under state and federal law:

> *Int'l Marble* adjudicated the prevailing party issue by reliance upon California law. Indeed, that court acknowledged that an action governed by the Copyright Act, or some other federal statute, would be distinguishable from that action and *Kona Enterprises*, both decided under state law. Thus, this court will rely instead on *Buchannon* and *Carbonell*, both decided under federal law, to determine whether Ross is a prevailing party.

*Rao v. Ross*, No. 08-01596, 2008 WL 2441926 (N.D. Cal. June 13, 2008) (Judge Marilyn Hall Patel).

Under California law, attorney's fees may be awarded following a voluntary dismissal. *See Drybread*, 151 Cal. App. 4th at 1072; *Int'l Marble & Granite of Colo., Inc. v. Cong. Fin. Corp.*, 465 F. Supp. 2d 993, 1001 (C.D. Cal. 2006) (Judge John J. Wilson). Accordingly, Teece's arguments under Rule 54 are not persuasive.

*Third*, Teece argues that under California law, defendants should not be considered the prevailing party where the claims were voluntarily dismissed early and the parties continue to litigate in another forum. This order disagrees. Teece has failed to cite any decision holding that defendants can never be the prevailing party following a voluntary dismissal. Teece cites *Baldain v. American Home Mortgage Servicing, Inc*., No. 09-0931, 2010 WL 2606666 (E.D. Cal. June 28, 2010) (Judge Lawrence K. Karlton), for the proposition that where plaintiff re-files in another jurisdiction, neither party has prevailed. In *Baldain*, the plaintiffs filed a suit in district court in connection with their home mortgage. After plaintiffs abandoned their federal claims, the court declined to retain supplemental jurisdiction over plaintiffs' state-law claims. Defendant sought attorney's fees and the court denied them, stating:

> [I]n this circumstance, defendants "no more 'prevailed' than does a fleeing army that outruns a pursuing one. Living to fight another day may be a kind of success, and surely it is better than defeat. But as long as the war goes on, neither side can be said to have prevailed."

7

*Id.* at *4 (*citing In re Estate of Drummond*, 149 Cal. App. 4th 46, 53 (2007)).

The current action, however, is distinguishable from the *Baldain* decision cited by Teece. For one thing, *Baldain* involved an action on a contract dispute pursuant to Section 1717, whereas here the claims were grounded in tort. In addition, Judge Karlton noted that "in some cases a defendant may prevail even though dismissal was without prejudice." *Ibid*. Other state courts have agreed with this sentiment and granted attorney's fees where a plaintiff has voluntarily dismissed. *See PNEC Corp. v. Meyer*, 190 Cal. App. 4th 66, 73 (2010); *Profit Concepts Mgmt., Inc. v. Griffith*, 162 Cal. App. 4th 950, 952 (2008).

Furthermore, this order finds the *Drummond* court's "fleeing army" analogy inapposite to the procedural history of this action. Even though Teece is not precluded from re-filing this action, defendants achieved their objective of the dismissal of all of plaintiff's claims in this venue. Teece, a sophisticated investor, dragged defendants into federal district court in the United States and forced defendants to spend substantial sums defending against a mega-claim for $62,000,000 in damages. That defendants took the lawsuit seriously and expended substantial resources defending against the action is to be expected. This order rejects the idea that someone may file a daisy chain of lawsuits and voluntarily dismiss each after the defendant has incurred substantial expense in defending itself and still be immune from liability under a clause like the one in question.

*Fourth*, Teece argues that the attorney's fees provision in the Murabaha Agreement covered only contract-based claims. For tort claims to be included in the attorney's fees provision, Teece argues, the provision must include broader language, *e.g.*, related to "the parties' relationship," or "any legal action arising out of" the documents or the parties' relationship. This order disagrees.

The attorney's fees provision stated that Teece would pay KFH its reasonable attorney's fees and costs in either of the following two circumstances:

> 9.1.2 In connection with any waiver, amendment, *legal consultancy* or consent required or requested in relation to the Transaction Documents; and/or

8

> 9.1.3  In contemplation of, or otherwise *in connection with, the enforcement of, or preservation of rights under, the Transaction Documents*.

(Bassak Exh. E at 000430) (emphasis added).  The complaint specifically alleged that defendants "induced" Teece into making the three million dollar investment in Canterbury (Compl. ¶ 23). Defendants correctly note that had they not defended themselves in this action, Teece could have obtained a default judgment against KFH finding, among other things, that Teece does not have to repay the three million dollar Murabaha loan.  It is unreasonable to argue that none of defendants' legal fees were "in connection with, the enforcement of, or preservation of rights under, the Transaction Documents."  Thus, the Murabaha Agreement was broad enough to cover that part of Teece's claims in this action seeking to undo the Murabaha Agreement.

*Fifth*, Teece argues that comity requires the denial of this motion, since Teece is currently pursuing the same claims before a New Zealand court.  "The international abstention doctrine allows a court to stay or dismiss an action where parallel proceedings are pending in the court of a foreign nation."  *Supermicro Computer Inc. v. Digitechnic, S.A.*, 145 F. Supp. 2d 1147 (N.D. Cal. 2001).  Requiring Teece to honor his attorney's fees clause for the trouble he has imposed on defendants in this district will not tie the hands of the New Zealand court.

## CONCLUSION

For the foregoing reasons, defendants' request for attorney's fees is **GRANTED IN PART**. Defendants may recover fifty percent of all fees and expenses reasonably incurred in this action. A companion order will give further direction.

In the event the New Zealand court ultimately holds the Murabaha Agreement unenforceable, then defendants must repay the money paid pursuant to this order.

**IT IS SO ORDERED.**

Dated: May 23, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9